## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No.: 21cv_____

JOHN DOE,

      Plaintiff,

v.

REGIS UNIVERSITY, a Colorado non-profit corporation;
REGIS UNIVERSITY BOARD OF TRUSTEES; and
FATHER PRESIDENT JOHN P. FITZGIBBONS, S.J., in his official capacity as the President
of Regis University,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

**COMES NOW** Plaintiff John Doe, by and through his attorneys Lawrence S. Mertes, P.C., and

makes this complaint against Defendants Regis University; Regis University Board of Trustees;

and Father President John P. Fitzgibbons, S.J., in his official capacity as the President of Regis

University, alleging as follows:

### I.      THE NATURE OF THE ACTION

1.  This action is brought by Doe following a violation of his procedural Due Process rights

    as guaranteed by the 5th Amendment of the Constitution of the United States of America

    as applied to actions taken by Regis during an investigation of Doe for sexual misconduct

    under the auspices of Title IX of the Education Amendments of 1972 ("Title IX").

2.  This action is also brought by Doe based on a claim of negligence as applied to actions

    taken by Regis during its investigation of allegations of sexual misconduct.

1

## II.      PARTIES

3.  Plaintiff John Doe (hereinafter "Doe" or "Plaintiff") is a natural person and a resident of Colorado.

4.  Defendant Regis University (hereinafter "Regis") is a nonprofit Colorado corporation with a principal business office located at 3333 Regis Blvd., A20, Denver, CO 80221.

5.  Defendant Regis University Board of Trustees is the governing body for Regis University, with a principal business office located at 3333 Regis Blvd., A20, Denver, CO 80221.

6.  Defendant Father President John P. Fitzgibbons, S.J., ("Father Fitzgibbons") is the president of Regis University, with a principal business office located at 3333 Regis Blvd., A20, Denver, CO 80221. Father Fitzgibbons is being sued in his official capacity as the president of Regis University.

7.  Both the Board and Father Fitzgibbons collaboratively administer operations of Regis and are ultimately responsible for policy, policy implementation, and supervision of all Regis employees, specifically to include those employees responsible for the implementation of Regis' student conduct and Title IX programs.

## III.      JURISDICTION AND VENUE

8.  This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331; the federal law claim arises under the Constitution and statutes of the United States[i].

9.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as to Plaintiff's pendent negligence claim brought under Colorado law and by virtue of the defendants' consent to have this claim brought in this Court in the interest of judicial economy.

10. This Court has personal jurisdiction over Defendant Regis on the ground that it is

conducting business within the State of Colorado.

11. This Court has personal jurisdiction over Defendants Board and Father Fitzgibbons on the grounds that they were employed by or empowered to take executive action on behalf of Regis at all times relevant herein and personally acted within the State of Colorado and the District of Colorado.

12. Venue for this action properly lies in this district pursuant to 28 U.S.C. § 1391 because the defendants are to be found in this judicial district and because the events or omissions giving rise to the claim occurred in this judicial district.

## IV.    FACTUAL BACKGROUND

13. During the fall semester of 2018 Doe was enrolled as a sophomore at Regis University. On or about October 9, 2018, a Regis official issued a Notice of Investigation ("NOI") to Doe advising him of a complaint that he had violated the Regis University Nondiscrimination and Sexual Misconduct Policy ("Policy") on September 12, 2018, by touching another student [hereinafter "KV"] during class between 11:00 AM-1:50 PM without her consent (hereinafter "First Allegation") and on September 12 at an unstated time by touching KV in Doe's residence hall (hereinafter "Second Allegation"). Attachment A (Regis Policy), Attachment B (NOI, First and Second Allegations)

14. The October 9 NOI also advised Doe that Regis had retained Mark Flynn to be the lead investigator on his case and advised that Flynn's role was to be a "neutral fact-finder."

15. On October 9, 2018, a Regis official also issued a no-contact order to Doe restricting him from having any contact with student KV.  Attachment C (No Contact Order)

16. On October 18, 2018, Doe provided a written statement to Flynn in which Doe:

   • Acknowledged that he was in two classes with KV

- Stated that he had sat near KV on occasion; however, if he was already seated, he had never moved to specifically sit next to KV in class.

- Acknowledged that there may have been an occasion on September 12 when his forearm or leg made incidental contact with KV.

- Denied placing his hand on KV's thigh on September 12 or at any other time.

- Agreed that on September 12 it was possible that he dropped his pen and when picking up his pen made incidental contact with KV's leg but specifically denied intentional contact or wrapping his hand around her leg and purposefully touching her leg.

- Advised that even if he had KV's consent to touch her leg that action would not be appropriate in class.

- Concurred that KV did accompany him to his apartment after class on September 12 to assist him with an assignment.

- Advised that he introduced KV to his roommate, "JN," during this visit.

- Stated that he sat with KV on his bed, with both of their feet on the floor, and advised that his only physical contact with KV was when he placed his arm around her back with his palm flat on her back as he leaned forward to see a shared computer screen for about 2 minutes.  Doe further stated that KV never said anything about his arm/hand or attempt to shrug it off of her back.

-  Advised that he was interested in dating another woman and knew that KV had a boyfriend and so he was not interested in starting anything with her.

- Stated that his bedroom door was either fully or partially closed but unlocked during the time he was sitting with KV.

4

- Specifically denied that he touched KV's bra, bra strap, or breast.  Specifically denied that he placed his hand on KV's thigh or touched KV's vagina.  Specifically denied lifting his leg as if to mount KV and denied placing his head on KV's shoulder at any time during their time in the bedroom.

- Stated that KV stayed with him to assist him with his assignment.

- Advised that he did not know KV's motive for making her complaint but speculated that their time together may have upset her boyfriend.

Attachment D (October 18 statement to Flynn)

17. On November 1, 2018, a Regis official issued a Supplemental NOI to Doe asserting that Doe had violated the Regis Policy on October 26, 2018, when, while walking to a Halloween party at night near 52nd and Meade, "you touched another person without their consent" by placing "your arm round that person; pulling them closer to you; moving your hand down to their hip and near their buttocks and/or vaginal area; and that you wouldn't loosen your grip as you did the above." The unnamed party simply was later identified as another student [hereinafter "KM"]. Attachment E (2nd NOI, Third Allegation)

18. Doe's response to the Third Allegation was submitted in writing to Flynn on November 2, 2018, and asserted the following:

- That he walked to a party in a group of about ten people on October 26, and KM was in the group and walked next to him that night.

- KM told him that she was cold, stepped closer to him as they walked, and that he placed an arm around her shoulder, eventually his hand came down to the area above her left hip before he returned it to her shoulder.  They separated after reaching the

party.

- He denied that his hand ever went near KM's buttocks or vagina.

- Later KM returned to his place at around 2:00 am, hanging out and talking, before Doe and another male student walked her back to her apartment.

- Doe noted that he had been subjected to false claims and rumors by a group of sophomores.

19. On November 2, 2018, Doe met with Flynn and was presented with a text message he had sent to KV on September 12 which read: "hey, sorry for hitting on you so hard, I didn't realize you had a boyfriend."

20. Doe responded to Flynn by explaining that it was a poor choice of words related to compliments he had given KV and denied that it related to any sexual misconduct.

21. On December 1, 2018, Regis issued Interim Restrictions which acted to "temporarily" restrict Doe from Regis University residence halls and campus activities pending the outcome of Doe's Title IX investigation.  Attachment G

22. On December 4, 2018, Regis issued a Supplemental NOI and a No Contact Order to Doe asserting that Doe had violated the Regis Policy "[o]n November 29, 2018 while at a social gathering in your residence hall, you touched [NG] without her consent, which included: Hugging her from behind and kissing her neck; Grabbing her hips and pulling her closer to you; Attempting to take off her clothes; Touching her breasts and other parts of her body; Placing your hand on her thigh and sliding it up to her vaginal area." Attachment H (3rd NOI, Fourth Allegation), Attachment I (No Contact Order)

23. On December 6, 2018, student KM approached Doe in the Regis campus cafeteria, sat down at his table, and apologized for filing a complaint against Doe with Regis, advising

that "she wasn't sure why she did it and didn't want to follow through with it."  Further, upon information and belief, KM did formally request that Regis drop her complaint, but Regis failed to notify Doe or formally act upon the request.

24. On December 19, 2018, Doe provided a responsive written statement to Flynn regarding the Fourth Allegation in which he stated:

- NG was one of approximately 15 guests who had come to his apartment for a party organized by one of his roommates.

- He played cards with NG in the living room, which was possibly a drinking game.

- He went upstairs with NG and two others to play beer pong in the upstairs hallway, he and NG teamed up for the game and afterwards they went back downstairs.

- He did not hold or hug NG, did not rub her breasts or stomach, did not kiss NG's neck, and stated that there was no flirtation.

- Once back downstairs he was not interacting with NG, was not sitting with her, did not ask her to sit with him, did not rub her back or compliment her and never discussed sex with her.

- He encountered NG in the kitchen area of the apartment later in the evening but did not engage her, did not pull her towards himself by her hips or otherwise, did not kiss her neck in any fashion.

- He has no recollection of sitting next to NG later in the evening while playing Mario Kart and did not sit with her on the couch, did not put an arm around her or touch her thigh.  Denies asking NG to come upstairs with him, rubbing his hands against NG's sides or pulling on her clothing.

- Denies pulling NG onto his lap.

- Denies having any discussion with his roommates regarding his behavior that evening.

Attachment J

25. At no point in the investigation was Doe permitted a live hearing, an opportunity to cross-examine witnesses in a live hearing, or permitted to learn the identity of certain witnesses against him.

26. At no point in the investigation did Flynn address the issue raised by Doe that the accusations against him were being fostered by others who intended to damage his reputation as related to this Title IX investigation and a previous Title IX investigation which occurred the proceeding school year. Further, the prior investigation which resulted in no finding of responsibility was used by Regis as a part of its rationale for imposition of Disciplinary Suspension.  Attachment K

27. Despite being empowered by Regis Policy to make relevancy determinations[ii], Flynn's investigative conclusions were instead bathed in reputational statements and the personal animosity of witnesses (see ¶64) which were entirely irrelevant to the allegations under investigation.  This resulted in a conclusion supported by an unfair assumption that "where there is smoke there must be fire."

28. On or about January 24, 2019 Flynn made a written report to Regis presenting findings which found Doe responsible for all allegations made by the three complainants.

29. On or about January 24, 2019 Doe responded to Flynn's report noting:

[Allegations 1-3]

- KV made it clear to Mr. Flynn that any contact with Doe in class on September 12 did not seem "odd."

- Witness RJ had advised Flynn that she had only seen Doe look at KV one time and did not observe Doe to have dropped his pen or touched KV in class on September 12.

- Witness EM offered similar testimony which denied seeing any untoward touching behaviors by Doe towards KV in class on September 12.  Nonetheless, EM was allowed -- if not encouraged -- by Flynn to speculate about Doe, advising that she "could picture Doe touching a classmate" and "would not be surprised" if Doe touched KV in the way she alleges.

- Witness JW, a fellow student who was not in class on September 12, offered to Flynn that she had "seen Doe touch KV's arm once."  Notably, this statement is contradicted by a text message from JW to Doe and calls into question JW's credibility when considered with other irrelevant, inaccurate, untruthful, and confounding statements made by JW to Flynn which include accusing Doe of "being in a white male bubble" and of having an unreciprocated interest in having a relationship with her.

[Allegation 4]

- Witness KV's actions on September 12 indicate some cognitive dissonance in that if she truly felt that she was being subjected to inappropriate touching, it would be unlikely that she would accompany Doe to his apartment and agree to sit alone with him on his bed (door closed or partially closed) to help him with his homework.

- Professor Angela Mays, the professor for the September 12 class attended by Doe and KV, advised that KV told her that she never said "no" to any interaction with Doe while in his apartment, and that KV admitted that "she might have been triggered by

an incident with her brother's friend when she was 15 years old and a door was locked" without further elaboration.  KV did not identify Doe as a perpetrator until Mays suggested Doe's name to her.  Mays suggested to Flynn that Doe needed help recognizing others' boundaries but never made this suggestion to Doe himself. Mays noted that she noticed no change in KV's demeanor after the September 12 class[iii].

[Allegation 5]

- KM advised Flynn that prior to October 26, another student named PD had pulled her aside to advise that Doe had multiple Title IX investigations pending, perhaps as many as 11, and that this action by PD tainted KM's perception of Doe.

- KM advised Flynn that she did not say anything (e.g. "no") to Doe during their encounter.

- Witness PD advised Flynn that he did not see any "sensitive" touching of KM by Doe on October 26 but claimed that he saw "a look" on Doe's face.  PD also confirmed that he told KM prior to the party that "there were a lot of rumors about Doe and at least two Title IX complaints involving him."  PD admitted that he did not see Doe's hand stray from KM's shoulder to her buttocks or front pelvic area but could not have due to their positioning.

- To this day, KM continues to reach out to Doe wanting to remain friends.

    [Allegations 6-10]

- NG advised Flynn that she never felt like she had to "push Doe off of her" and that she never said "no" or "stop."  No witness corroborates NG's claim that on initial contact Doe touched her and kissed her neck.  NG tells Flynn at various junctures she was "drinking, but not too much" and was "drunk" during the party.  PD also asserted

10

that NG was "pretty drunk" during the party.  NG advised Flynn that Doe's reputation was "pretty notorious."

- Witness PE asserted that Doe had a bad reputation involving incidents similar to KM's claim.

- Witness VM claimed to have seen Doe "kissing NG's neck" and asserted that NG seemed uncomfortable.

Attachment K

30. Doe also noted the following positive information from Flynn's report, including:

- No sexual harassment found in the investigation.

- No-contact orders were effective.

- No "severe, persistent, or pervasive conduct that unreasonably interferes with any complainant's school environment or which creates an intimidating, hostile or offensive school environment."

Attachment K

31. Flynn made no effort to fully address the issue of Welcomeness when assessing what is truly a "he-said, she-said" case.

32. Flynn made no effort to address the motive(s) of complaining parties and witnesses, such as the issue of whether KV was engaging in transference[iv] by redirecting feelings related to a prior negative experience at her home with a brother's friend towards Doe.

33. On January 31, 2019 Doe wrote a further "to whom it may concern" response to the Flynn findings in which he offered his personal history; provided further clarifying information concerning the allegations, mitigation, reference letters, and a personal request that he be allowed to continue his studies at Regis.  Attachment L

34. On February 15, 2019, Doe  received notification from Regis Assistant Dean Jackie Kus that she had reviewed Flynn's findings of responsibility and all of the allegations and stated her concurrence with the findings holding Doe accountable, more likely than not.

Attachment M

35. Dean Kus wrote that she considered relevant factors to include severity of injury and/or harm, prior violations of the same or similar type, and use of alcohol or drugs by respondent to determine an appropriate sanction and considered it to be significant that the matter investigated included the claims by multiple women within a ten-week period. Kus concluded by sanctioning Doe with a Disciplinary Suspension through May 2022.

Attachment N

36. Sometime after February 15, 2019, KV appealed the sanctions imposed upon Doe.

37. On or about February 28, 2019, Dean Kus' determination on appeal was forwarded to Regis Vice President Barbara Wilcots.  On March 1, 2019, Doe received notice that KV's appeal was denied and a final determination had been entered.

## V.     TITLE IX

38. Title IX[v] is a federal law which prohibits sex discrimination in any education program or activity receiving federal financial assistance. 20 U.S.C. Section 1681(a)

https://www.govinfo.gov/content/pkg/USCODE-2010-title20/pdf/USCODE-2010-title20-chap38.pdf

39. Regis is a recipient of federal Department of Education funding and is therefore subject to Title IX of the Education Amendments of 1972 ("Title IX").

40. Title IX and 34 C.F.R. ¶ 668.46(k)(2)(i) place a duty on Regis to establish and follow procedures for resolving allegations of sexual misconduct, from investigation to final

result, that are <u>prompt, fair, and impartial</u>.

41. In its implementation of Title IX, a federal law, Regis is obligated to provide students with procedural Due Process as provided by the 5th Amendment[vi].

42. On December 18, 2017, Regis published the "Regis University Nondiscrimination and Sexual Misconduct Policy" (hereinafter "Policy") applicable to Regis community members including faculty, students, staff, trustees, contract personnel, agents, visitors, invitees, and volunteers. Attachment A

43. At all times pertinent to this action, the Regis Policy guided the investigation of Doe.

## VI.    TITLE IX GUIDANCE

44. Generally, administrative guidance[vii] from a federal agency is non-binding advice given to the public regarding how best to comply with a particular law or regulation. Guidance is often used to explain the objective or interpretation of a vague or nonspecific law or requirement.

45. On September 22, 2017, the Department of Education revoked Guidance previously issued by the Obama Administration in 2011 and 2014 https://www.ed.gov/news/press-releases/department-education-issues-new-interim-guidance-campus-sexual-misconduct ("2017 Press Office Release") and issued new Guidance in the form of a Question-and-Answer document ("2017 Guidance").  Further, 2017 Guidance was in effect at all times relevant to Regis's investigation of Doe.  Attachment O

https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf

46. Addressing the continuing obligation of schools like Regis, the Department of Education's rescission letter addressed requirements which continued to be imposed on schools stating:

"A school must adopt and publish grievance procedures that provide for a prompt and equitable resolution of complaints of sex discrimination, including sexual misconduct. Moreover, whether or not a student files a complaint of alleged sexual misconduct or otherwise asks the school to take action, where the school knows or reasonably should know of an incident of sexual misconduct, the school must take steps to understand what occurred and to respond appropriately. In particular, when sexual misconduct is so severe, persistent or pervasive as to deny or limit a student's ability to participate in or benefit from the recipient's school's programs or activities, a hostile environment exists and the school must respond."

47. Under 2017 Guidance, a school investigating a claim of sexual harassment (which necessarily includes an allegation of sexual assault) must adopt and publish grievance procedures that provide for a prompt and *equitable* resolution of complaints of sex discrimination, including sexual misconduct. Answer, 2017 Guidance, Question 4.

48. Among the elements to be considered when evaluating whether a school's grievance procedures are prompt and equitable is an assessment of whether the school "ensures an adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence."  2017 Guidance, Answer to Question 4 (part iii).

49. Despite 2017 Guidance, the Regis Policy does not provide a live hearing under any circumstances.

50. Despite 2017 Guidance, The Regis Policy does not provide for cross-examination at a live hearing under any circumstances.

51. Despite 2017 Guidance, the Regis Policy does not require Regis to identify witnesses to an investigation.

52. While Regis Policy allows parties to propose witnesses to be interviewed, the designated

Regis investigator has "discretion" to determine whether a witness has "relevant information" and may decline to meet with or interview the proposed witness.

53. In assessing whether or not a school's process is equitable, it is important to note that "in every investigation conducted under the school's grievance procedures, **the burden is on the school – not on the parties** to gather sufficient evidence to reach a fair, impartial determination as to whether sexual misconduct has occurred and, if so, whether a hostile environment has been created that must be redressed."  2017 Guidance, Answer to Question 6.

54. Despite 2017 Guidance, Regis' Policy is silent on the issue of who bears the burden of proof.

55. In its investigation of Doe, Regis improperly placed the burden of proof on Doe himself, violating his right to Constitutional Due Process.

56. An equitable investigation of a Title IX complaint requires a trained investigator to analyze and document the available evidence to support reliable decisions, objectively evaluate the credibility of parties and witnesses, synthesize all available evidence – including both inculpatory and exculpatory evidence – and take into account the unique and complex circumstances of each case. Answer to Question 6.

57. Regis failed to conduct an equitable investigation of Doe as Regis' Policy affords unfettered discretion to an assigned investigator[viii] and the "deciding party.[ix]"  Under Regis Policy the deciding party is unburdened by any requirement to synthesize and assess witness credibility consisting of all of the evidence, both inculpatory and exculpatory, as well as the unique and complex circumstances of the particular allegations. Further, the deciding party under Regis' Policy has no obligation to provide

respondents, like Doe, with a live hearing, cross-examination at a live hearing, or the names of all of the witnesses in the investigation.

58. Regis' overall failure to comply with 2017 Guidance conducting an equitable Title IX investigation involving sexual misconduct violates Doe's right to constitutional Due Process.

59. While rescinding 2011 and 2014 Guidance, the 2017 Press Office Release document specifically advises that the Department of Education would continue to rely on its Revised Sexual Harassment Guidance, which was informed by a public comment process and issued in 2001 ("2001 Guidance"), as well as the Dear Colleague Letter on Sexual Harassment issued on January 25, 2006.

https://www2.ed.gov/about/offices/list/ocr/docs/shguide.html

https://www2.ed.gov/about/offices/list/ocr/letters/sexhar-2006.html

60. 2001 Guidance directs schools to assess the issue of "Welcomeness." 2001 Guidance, page 13/38, noting that the section of 2001 Guidance entitled "Sexual Harassment" explains that "in order for conduct of a sexual nature to be sexual harassment, it must be unwelcome. Conduct is unwelcome if the student did not request or invite it and 'regarded the conduct as undesirable or offensive'." 2001 Guidance also notes that acquiescence in the conduct or the failure to complain does not always mean that the conduct was welcome.

61. 2001 Guidance states that "[i]f there is a dispute about whether harassment occurred or whether it was welcome in a case in which it is appropriate to consider whether the conduct would be welcome determinations should be made be based on the totality of the circumstances." 2001 Guidance p14/38.

62. The investigation of Doe conducted by Regis failed to make a full and fair factual determination as to the issue of Welcomeness in a "he-said, she-said" case which lacked a live hearing with cross-examination and where the identity of some witnesses was concealed.

63. The types of information that the 2001 Guidance suggests would be "helpful" in resolving a Welcomeness dispute include:

A. Statements by any witness to the alleged incident.

B. Evidence about the relevant credibility of the allegedly harassed student and the alleged harasser. For example, the level of detail and consistency of each person's account should be compared in an attempt to determine who is telling the truth.

C. Evidence of prior harassment.

D. Evidence of the alleged-harassed student's reaction or behavior after the alleged harassment. For example, were there witnesses who saw the student immediately after the alleged incident who say that the student appeared to be upset?

E. Evidence about whether the student claiming harassment filed a complaint or took action to protest the conduct soon after the alleged incident occurred.

F. Other contemporaneous evidence.

64. The investigation of Doe conducted by Regis failed to make a factual determination as to the issue of Welcomeness by failing to assess the relevant credibility of the allegedly harassed student and the alleged harasser – such as by comparing the level of detail and consistency of each person's account to determine who is telling the truth.

65. The investigation of Doe conducted by Regis failed to make a factual determination as to the issue of Welcomeness by failing to consider evidence that the multiple complaints

were fostered by a conspiracy of students to act against Doe, including one of Doe's male roommates who was believed to have an unrequited "crush" on Doe;  a female complainant [K ] who attempted to withdraw her complaint against Doe; and witness NG, whose complaint, upon information and belief, was filed at the behest of another party with whom she was romantically involved[x].

## VII.   DUE PROCESS APPLICABLE TO TITLE IX INVESTIGATIONS

66. The Fifth Amendment of the United States Constitution affords students Constitutional Due Process rights which are applicable to federal law, including Title IX.

67.  The Fifth Amendment's Due Process Clause states:

> *No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.*  5th Amendment, U.S. Constitution.

68. Doe has a strong property interest in completing his education and avoiding an improper suspension from Regis.[xi]

69. Doe has a strong liberty interest in preserving his good name and a right to pursue his chosen vocation as a teacher.[xii]

70. Due Process requires fundamental fairness, and some form of opportunity for a live hearing before a neutral factfinder[xiii] is required before an individual is finally deprived of a liberty or a property interest[xiv].

71. In the context of a Title IX student conduct hearing, <u>particularly where witness credibility is an issue,</u> procedural due process requires a hearing with some form of live questioning in front of the factfinder.[xv]

72. Due Process mandates that students facing a hearing on charges of misconduct be given the names of witnesses against them[xvi] in the absence of a live hearing where such witnesses will be called to testify.

### VIII.   PLAINTIFF'S FIRST CAUSE OF ACTION
### Violation of the Fifth Amendment of the United States Constitution – Procedural Due Process

73. Plaintiff incorporates by reference paragraphs 1 through 72 as if fully stated herein.

74. At all times pertinent to this action, whether or not a student files a complaint of alleged sexual misconduct or otherwise asks the school to take action, where the school knows or reasonably should know of an incident of sexual misconduct, the school must take steps to understand what occurred and respond appropriately[xvii].

75. At all times pertinent to this action, when sexual misconduct is so severe, persistent, or pervasive as to deny or limit a student's ability to participate in or benefit from the school's programs or activities, a hostile environment exists and the school must respond[xviii].

76.   Upon information and belief, Regis created its Policy in response to the federal government's Title IX mandate and Department of Education Guidance rather than face investigation and sanction by the Department of Education's Office of Civil Rights,

including but not limited to the loss of federal funding.[xix]

77.     The Fifth Amendment to the United States Constitution prohibits the deprivation of life, liberty, or property, without due process of law.

78.     Doe has a protected liberty interest in his or her good name, reputation, honor, and integrity which cannot be deprived without due process of law.

79.     Doe has a protected property interest in his pursuit of his education, as well as in future educational and employment opportunities and occupational liberty which cannot be deprived without due process of law.

80.     Under Title IX, when a private school accepts federal funds, it becomes responsible for Title IX compliance and application of published Title IX Guidance in addition to being restrained by the Fifth Amendment's Due Process requirements for the process implemented.

81.     In its investigation of Doe, Regis flagrantly violated Doe's clearly established Fifth Amendment Due Process rights, including minimal requirements of procedural fairness, by denying Doe equitable resolution of his case.  Regis further violated Doe's Fifth Amendment Due Process Rights by failing to ensure an adequate, reliable, and impartial investigation which would have provided Doe with:

*       An opportunity to be heard and participate in a meaningful fashion

*       A live hearing

*       Live cross-examination at a hearing

*       Identification of all witnesses

*       Investigation of the issue of Welcomeness

*       Application of the preponderance standard and,

\*      Properly placing the burden of proof upon Regis instead of upon Doe.

82.     As a result of the foregoing, Doe is entitled to damages in an amount to be

determined at trial, plus prejudgment interest, attorney's fees, and costs.

## IX.     PLAINTIFF'S SECOND CAUSE OF ACTION
### Negligence

83.     Plaintiff incorporates by reference paragraphs 1 through 82 as if fully stated

herein.

84.     Defendants owed duties of care to Plaintiff arising from the obligations set forth

in Regis Policy and Guidance issued by the U.S. Department of Education's Office of

Civil Rights.  Such duties included, without limitation:

\*      A duty of reasonable care to allow Plaintiff a reasonable opportunity to present

   information and witnesses in support of his defense.

\*      A duty of care to conduct an equitable, impartial, and thorough investigation of

   the allegations of sexual misconduct against Plaintiff.

\*      A duty to conduct an objective evaluation of witness credibility.

\*      A duty to place the burden of proof on itself and not on any other party.

\*      A duty to assess the issue of Welcomeness.

\*      A duty of care to properly utilize the preponderance of evidence standard in

   reaching a determination.

\*      A duty to investigate claims of bias in the statements of witnesses.

85. Defendants breached their duties owed to Plaintiff.

86. As a direct and proximate result of the defendants' conduct, Plaintiff sustained damages

including -- without limitation -- emotional distress, loss of educational and career

opportunities, economic injuries, and other direct and consequential damages.

86. As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorney's fees, costs, and expenses.

## X.     PRAYER FOR RELIEF

Plaintiff John Doe demands judgment against the defendants awarding Plaintiff damages in an amount to be determined at trial including, without limitation, damages to physical well-being, emotional and psychological damages, damage to reputation, past and future economic losses, loss of educational opportunities, loss of future career prospects, prejudgment interest, attorney fees and costs, reversal of Plaintiff's suspension, reinstatement of Plaintiff's status as an undergraduate student at Regis, and removal of any notation of a suspension on Plaintiff's transcript and student conduct records.

## XI.     JURY DEMAND

Plaintiff herein demands a trial by jury of all triable issues in the present matter.

Dated: February 25, 2021

**RESPECTFULLY SUBMITTED,**

LAWRENCE S. MERTES, P.C.

By:    /s/ *Lawrence S. Mertes*
       Attorneys for Plaintiff
       LAWRENCE S. MERTES, P.C.
       2235 Broadway
       Boulder, CO 80302
       303-440-0123, Fax 303-449-2656
       Larry@merteslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of February, 2021, I electronically filed the foregoing with

the Clerk of the Court using the Electronic Case Filing System.


/s/   *Lawrence S. Mertes*

<hr />

[i] <u>Omni Capital Int'l v. Rudolph Wolff & Co.</u>, 484 U.S. 97, 103-104, 108 S.Ct. 404 L.Ed.2d. 415 (1987) (held: in federal question cases, personal jurisdiction flows from the Due Process Clause of the Fifth Amendment).

[ii] Regis Policy, p 12, paragraph g)

[iii] A Welcomeness Evaluation, as set forth in the Department of Education's 2001 Title IX Guidance notes: "Evidence of the alleged-harassed student's reaction or behavior after the alleged harassment.  For example, were there witnesses who saw the student immediately after the alleged incident who say that the student appeared to be upset?"

[iv] **Transference** occurs when a person redirects some of their feelings or desires for another person to an entirely different person. One example of transference is when you observe characteristics of your father in a new boss. You attribute fatherly feelings to this new boss. They can be good or bad feelings. As another example, you may meet a new neighbor and immediately see a physical resemblance to a previous spouse. You then attribute mannerisms of your ex to this new person.  Transference can happen even in the face of distinct differences. It often makes you look past these dissimilarities to the likenesses. Source:  https://www.healthline.com/health/mental-health/transference

[v] The Title IX regulation states that "except for provided elsewhere in this part, no person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any academic, extracurricular, research, occupational training, or other education program or activity operated by a recipient which receives ... Federal financial assistance ....
(b) *Specific prohibitions.* Except as provided in this subpart, in providing any aid, benefit, or service to a student, a recipient shall not, on the basis of sex:
(1) Treat one person differently from another in determining whether such person satisfies any requirement or condition for the provision of such aid, benefit, or service.
(2) Provide different aid, benefits, or services or provide aid, benefits, or services in a different manner.
(3) Deny any person any such aid, benefit, or service.
(4) Subject any person to separate or different rules of behavior, sanctions, or other treatment.
(5) Discriminate against any person in the application of any rules of appearance.
(6) Apply any rule concerning the domicile or residence of a student or applicant, including eligibility for in-state fees and tuition.
(7) Aid or perpetuate discrimination against any person by providing significant assistance to any agency, organization, or person which discriminates on the basis of sex in providing any aid, benefit or service to students or employees.
(8) Otherwise limit any person in the enjoyment of any right, privilege, advantage, or opportunity." 45 C.F.R. § 86.31
https://www.ecfr.gov/cgi-bin/retrieveECFR?gp=&SID=d26dfaaeecd977dfa216731c71b060e0&mc=true&r=PART&n=pt45.1.86

[vi] <u>Doe v. Rhodes College</u>, 2019-cv-02336, W.D. Tenn., June 14, 2019 [Document 33](assessing an erroneous outcome claim against a private school, brought under Title IX, the court applied Due Process protections associated with both the 5th and 14th Amendments), compare with <u>Doe v. University of Denver</u>, 952 F.3d 1182, 1186 (10th Cir. 2020) (held: 14th Amendment procedural Due Process protections found inapplicable due to lack of state action. Entitlement to Due Process protection under the 5th Amendment was never raised).

[vii] https://www.gao.gov/assets/670/669721.pdf

[viii] An investigator under Regis Policy is charged with commencing a "thorough, reliable impartial investigation which entails obtaining available evidence and may entail identifying sources of expert information, as necessary." Contrast with 2017 Guidance requirement for an equitable investigation.

[ix] The "deciding party" under the Regis Policy for student respondents is the Director of Student Conduct, or (his/her) designee.  Attachment A, p 13, paragraphs decn) to p)

[x] A Welcomeness Evaluation, as set forth in the Department of Education's 2001 Title IX Guidance considers "[e]vidence about whether the student claiming harassment field a complaint or took action to protest the conduct soon after the alleged incident occurred".

[xi] Goss v. Lopez, 419 U.S. 565, 579, 95 S. Ct. 729, 42 L. Ed.2d 725 (1975); Siblerud v. Colo. State Bd. Of Agric., 896 F. Supp. 1506, 1515 (D. Colo. 1995) 1042

[xii] Meyers v. Nebraska, 262 U.S. 390, 399-400, 423 S.Ct. 625, 67 L.Ed. 1042 (1923)

[xiii] Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S.Ct, 1610, 64 L.Ed.2d 182 (1980)

[xiv] Matthews v. Eldridge, 424 U.S. 316, 333-35, 96 S. Ct 893, 47 L. Ed 2d 18 (1976); Messeri v. DiStefano, 18-cv-2658, August 20, 2020, Order Granting in Part and Denying Defendant's Motion for Summary Judgment [Document 89];  Furey v. Temple Univ., 884 F.2d 223, 246 (E.D. Pa. 2012)

[xv] Haidak v. Univ. Mass.-Amhearst, 933 F. 3d 56, 69 91st Cir. 2019); Doe v. Baum, 903 F.3d 575, 581-83 (6th Cir 2018); Winnick v. Manning. 460 F.2d 545, 550 (2nd Cir. 1972); Messeri, supra

[xvi] Flaim v. Medical College of Ohio, 418 F.3d 629, 639 (6th Cir. 2005)

[xvii] https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf (Q&A#1)

[xviii] https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf (Q&A #1)

[xix] https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf; https://www2.ed.gov/about/offices/list/ocr/aboutocr.html;