IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-00580-DDD-NYW

JL,

    Plaintiff,

v.

REGIS UNIVERSITY,
REGIS UNIVERSITY BOARD OF TRUSTEES, and
FATHER PRESIDENT JOHN P. FITZGIBBONS, S.J., in his official capacity as the President of Regis University,

    Defendants.

## ORDER

Magistrate Judge Nina Y. Wang

    This matter comes before the court on Plaintiff's Request for Leave to Conduct Discovery on a Title IX Claim ("Motion for Discovery" or "Motion"), [Doc. 71, filed March 16, 2022]. The court considers the Motion pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated April 30, 2021, [Doc. 20], and the Order Referring Motion dated March 16, 2022, [Doc. 72]. Upon review of the Motion, the entire docket, and applicable case law, the court respectfully **DENIES** Plaintiff's Motion for Discovery.

**RELEVANT FACTUAL BACKGROUND**

    The relevant facts are drawn from the operative Amended Complaint and Jury Demand ("First Amended Complaint"), [Doc. 55, filed November 22, 2021], and taken as true for the purposes of the instant Motion. This case arises out of a Title IX investigation that was conducted by Defendant Regis University ("Regis") against Plaintiff JL ("Plaintiff"), a male, relating to allegations of sexual misconduct raised by three female students against Plaintiff. *See* [*id.*].

Plaintiff asserts two causes of action in this case. Plaintiff's first cause of action is for violation of procedural due process under the Fifth Amendment of the United States Constitution, based on the allegation that Regis denied Plaintiff an "equitable resolution of his case" and failed "to ensure an adequate, reliable, and impartial investigation" ("First Cause of Action"). [*Id.* at ¶¶ 73–82]. Plaintiff's second cause of action is for negligence, based on the allegation that Defendants breached their "duties of care to Plaintiff arising from the obligations set forth in Regis Policy and Guidance issued by the U.S. Department of Education's Office of Civil Rights" ("Second Cause of Action"). [*Id.* at ¶¶ 83–86].

Relevant here, on December 2, 2021, the undersigned held a Discovery Conference at the Parties' request, *see* [Doc. 56; Doc. 57], where the court advised the Parties that "legal authority generally does not permit a party to seek discovery for the purpose of developing a cause of action", [*id.* (citing *Cuomo v. The Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 531 (2009))]; and ordered that "[t]o the extent that Plaintiff seeks discovery prior to seeking to amend the operative pleading, Plaintiff should proceed with a formal motion", [*id.*].

On March 16, 2022, Plaintiff filed the instant Motion for Discovery, wherein Plaintiff seeks leave to conduct discovery "on a [p]otential Title IX [c]laim." [Doc. 71 at 1]. Plaintiff acknowledges that the operative First Amended Complaint does not assert a cause of action under Title IX, *see* [*id.* at ¶ 1], but he contends that his request for discovery on a potential Title IX claim is proportional to the needs of this case because, among other reasons, "without access to discovery currently held closely held by [D]efendants, JL is . . . unable to make a determination as to the validity of a discrimination claim", *see* [*id.* at 13–14].

On April 6, 2022, Defendants responded to the Motion ("Response"), [Doc. 76], arguing that Plaintiff's request is "irrelevant" and "improper" because "[t]here is no Title IX claim being

2

litigated" in this case. [*Id.* at 2]. Plaintiff did not file a Reply, and his time to do so has passed. *See* D.C.COLO.LCivR 7.1(d). Thus, the Motion for Discovery is ripe for determination.

## LEGAL STANDARDS

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery here. The Rule permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In considering whether the discovery sought is proportional, the court weighs the importance of the discovery to the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*.

This definition of the permissible scope does not include all information "reasonably calculated to lead to admissible evidence." The amendments to Rule 26, effective December 1, 2015, purposefully removed that phrase. *See In re Bard Filters Products Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). As explained by the *Bard* court, the Advisory Committee on the Federal Rules of Civil Procedure was concerned that parties and courts had incorrectly used the phrase to expand the scope of discovery to a point where the scope "might swallow any other limitation." *Id.* (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment). Rather, the applicable test is whether the evidence sought is relevant to any party's claim or defense and proportional to the needs of the case, though the information sought need not be admissible to be relevant to a claim or defense. *Id.*; Fed. R. Civ. P. 26(b)(1). Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of

3

any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."

The Advisory Committee Notes to the 2015 Amendments make clear that the party seeking discovery does not bear the burden of addressing all proportionality considerations. Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment. Generally, when discovery on its face appears to be relevant, the responding party bears the burden of establishing that the requested discovery (1) does not fall within the scope of relevant evidence, or (2) is of such marginal relevance that the potential harm of discovery is outweighed by the benefit. *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004) (citations omitted). The objecting party cannot "sustain this burden with boilerplate claims that the requested discovery is oppressive, burdensome or harassing." *Id.* (citation omitted). But when the relevance of a discovery request or device is not apparent on the face of the request or device itself, the proponent of the discovery bears the burden of making an initial showing of relevance. *See Thompson v. Jiffy Lube Int'l, Inc.*, No. 05-1203-WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007) ("[T]here is no presumption in the federal rules of civil procedure that a discovery request is relevant. The proponent of a discovery request must, in the first instance, show the relevance of the requested information to the claims or defenses in the case."). The court "must limit the frequency or extent of discovery otherwise allowed by these rules if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

**ANALYSIS**

As a preliminary matter, the Local Rules of Practice of the United States District Court for the District of Colorado – Civil provide that "[a] motion under Fed. R. Civ. P. 26 or 37 directed to an interrogatory, request, or response under Fed. R. Civ. P. 33, 34, or 36 shall set forth either in

the text of the motion or in an exhibit to the motion *the specific interrogatory, request, or response to which the motion is directed*." D.C.COLO.LCivR 37.1 (emphasis added).

In the Motion, Plaintiff seeks leave "to conduct discovery as to a Title IX discrimination claim in this action." [Doc. 71 at ¶ 1]. Specifically, Plaintiff seeks to compel the discovery of the following:

> training materials and statistical disparities in gender makeup of complainants and respondents, which when combined with documented investigative failures and disturbing procedural deficiencies which favored the complainants and disfavored JL which would demonstrate JL was a victim of sex bias.

[Doc. 71 at 14]. Plaintiff also asserts that "[e]xamples of the particularized information" he seeks are "set forth in the defendants' denied and partially answered discovery responses"; and he directs the court's attention to "Attachment J" to the Motion for Discovery, [Doc. 71-10], which purportedly "track[s]" the particular discovery requests at issue. *See* [Doc. 71 at 14]. Attachment J consists of 39 pages of discovery requests and responses, with various responses highlighted throughout the attachment, *see, e.g.*, [*id.* at 5–6, 10–11, 25, 28–29, 34]. Notably, however, Plaintiff does not cite to a single page in Attachment J; and, apart from his summary of the documents above, he does not identify which particular discovery requests are at issue. *See* [Doc. 71 at 14].[1]

---

[1] Plaintiff's general reference to the 39 pages contained in "Attachment J," without more, does not sufficiently set forth the specific interrogatory, request, or response to which the Motion is directed. *See id.* While the court notes that some of the highlighted responses in Attachment J appear related to Plaintiff's request for discovery related to a Title IX claim, *see, e.g.*, [Doc. 71-10 at 5–6], the court will not presume to identify which requests are indeed at issue, nor is the court required to do so. *See, e.g., United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself"); *see also Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants).

In any event, Plaintiff's Motion expressly seeks leave to conduct discovery not as to an *existing* claim in this case, but rather "on a [p]otential Title IX [c]laim."[2] [Doc. 71 at 1]. As mentioned, Rule 26 provides that a party may seek discovery that is relevant and proportional to the needs of the case. *See Larson v. Larson*, 687 Fed. App'x 695, 707 (10th Cir. 2017) (citing to Fed. R. Civ. P. 26(b)(1)). Thus, the court turns to the Parties' arguments, considering first the question of relevance, and then turning to whether the discovery sought is proportional to the needs of the case.

***Relevance.*** Plaintiff, as the party seeking production, has the initial burden of showing relevance. *See Chung v. Lamb*, No. 14-cv-03244-KLM, 2017 WL 10619941, at *3 (D. Colo. Oct. 24, 2017) (citing *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 539 (D. Kan. 2006)); *see also* [Doc. 71 at ¶ 34 (Plaintiff's acknowledgment that "[t]he burden of demonstrating relevance remains on the party seeking discovery")]. Evidence is considered relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

As noted, Plaintiff seeks "discovery as to a Title IX discrimination claim" that he has not asserted in this action. [Doc. 71 at ¶ 1]. In support of his request, Plaintiff argues that discovery he has conducted in this case thus far "reveals disturbing evidence of a flawed investigation by Regis of the claims made against JL[,]" which includes, *inter alia*, evidence of gender-based "bias in the investigation" and "a disregard of then-applicable Title IX Guidance from the Department of Education in the conduct of Regis' Investigation from start to finish." [*Id.* at ¶ 4]. According to Plaintiff, the purported "evidence of gender biased discrimination against [Plaintiff]" includes

---

[2] "Title IX 'bars the imposition of university discipline where [sex] is a motivating factor in the decision to discipline.'" *Doe v. Univ. of Denver*, 1 F.4th 822, 829 (10th Cir. 2021) (quoting *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994)).

6

Regis's "delegation of [Plaintiff's] investigation to a contract investigator" and issues with Regis's Student Handbook, which "contains both a Student Code of Conduct and a Nondiscrimination and Sexual Misconduct Policy" that applied to the claims made against Plaintiff. *See* [*id.* at ¶¶ 6–26 (capitalizations omitted)]. For support, Plaintiff cites to various attachments, including Regis's Student Handbook and Title IX Policy, the third-party investigator's deposition transcript, and Defendants' responses to Plaintiff's discovery requests. *See* [Doc. 71-1 to Doc. 71-10].

In the Response, Defendants argue "[t]here is no Title IX claim being litigated, and any discovery geared toward investigating and substantiating same is irrelevant and in turn improper." [Doc. 76 at 2]. Defendants further contend that the information Plaintiff seeks is irrelevant to a Title IX claim which Plaintiff "may attempt to assert . . . at some future date". [*Id.* at 3]. The court respectfully agrees with Defendants.

Indeed, Plaintiff's Motion does not address the relevance of the "discovery related to a [Title IX] sex discrimination claim" with respect to the claims or defenses presently asserted in this case. *See* [Doc. 71]; *see also* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."). Rather, Plaintiff expressly seeks "leave from this court to conduct discovery on a *potential* Title IX claim." [Doc. 71 at 1 (emphasis added) (capitalizations omitted)]. However, the court is "not required to permit [P]laintiff to engage in a 'fishing expedition' in the hope of supporting his claim." *McGee v. Hayes*, 43 Fed. Appx. 214, 217 (10th Cir. 2002) (citation omitted). Moreover, although the court notes that Plaintiff's assertions in the Motion regarding the flaws in Defendants' investigation, *see* [Doc. 71 at ¶ 4], appear to bear some relation to Plaintiff's First and Second Causes of Action in the First Amended Complaint, *see* [Doc. 55 at ¶¶ 73–86], again, Plaintiff does not make this argument in the Motion. And it is not appropriate for

7

the court to craft arguments for any party, particularly ones who are represented by able counsel. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself"); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that the court has no obligation to make arguments or perform research on behalf of litigants). Accordingly, the court finds that Plaintiff has not met his burden to establish the relevance of the discovery he seeks in the Motion.

***Proportionality.*** Notwithstanding Plaintiff's failure to address how discovery on a potential Title IX claim is relevant to the existing claims in the First Amended Complaint, Plaintiff contends that his request is nevertheless proportional to the needs of this case. Specifically, Plaintiff argues the proportionality factors warrant such discovery on the grounds that this case involves the following:

> (1) the determination of a sex discrimination claim under Title IX in a circumstance *where there has been an important shift in case law*; (2) the amount in controversy includes a considerable claim for attorney fees, costs, a claim for loss of tuition and economic damages related to his suspension, and JL's assertion of a claim under Title IX; (3) that the defendants control all access to relevant information which would constitute indirect *proof of discrimination necessary to plausibly demonstrate that the decision to suspend JL was motivated by anti-male bias* and to address any pretextual assertions of non-discriminatory reasons which might be asserted by the defendants under a McDonnell analysis; (4) the defendants are the only party to have -- within their control or the control of their agents, such as Flynn -- the discovery currently withheld from JL, Attachment J; (5) without access to discovery currently held closely by the defendants, JL is subject to informational dissymmetry and *unable to make a determination as to the validity of a discrimination* claim or otherwise work towards a resolution of the issues in this action; and, (6) and, the defendants can deliver the discovery requested at little to no expense.

[Doc. 71 at 13–14 (emphasis added) (endnote omitted)].

The court remains unpersuaded—Plaintiff's proportionality argument merely emphasizes that Plaintiff is seeking the discovery at issue only to establish evidence in support of a Title IX

8

sex discrimination claim that he has not asserted in this case. *See* [*id.* (arguing the discovery he seeks "would constitute indirect proof of discrimination necessary to plausibly demonstrate that the decision to suspend JL was motivated by anti-male bias . . ."; and "without access to [such] discovery . . ., JL is subject to informational dissymmetry and unable to make a determination as to the validity of a discrimination claim")].

Notably, foundational to Plaintiff's proportionality argument is his contention that this case involves "the determination of a sex discrimination claim under Title IX in a circumstance where there has been an important shift in case law[.]" [*Id.* at 13]. For support, Plaintiff cites to *Doe v. University of Denver* ("*Doe II*"), 1 F.4th 822 (10th Cir. 2021), for the proposition that *Doe II* "allowed, *for the first time in this district*, a claim that the University's sexual-assault investigation against the plaintiff was tainted by anti-male bias to such a degree that it was reasonable to infer sex was a motivating factor in the University's expulsion decision – a claim of sex discrimination under Title IX, 20 U.S.C. §1681[ ]." [*Id.* at ¶ 3 (emphasis added)]. Based on the foregoing contentions, Plaintiff then posits that he cannot assert a claim for sex discrimination related to Defendants' sexual assault investigation under Title IX without *first* conducting discovery on the viability of such a claim. *See* [*id.*]. Specifically, Plaintiff insists that he has not asserted a Title IX claim in this case for two reasons:

> a) <u>Doe I</u>[3] was fixed 10th Circuit law which created an impossibly high bar for making a claim of sex discrimination for an accused male student at the time this

---

[3] Plaintiff's Motion does not cite to "*Doe I*", nor does Plaintiff explain what the Tenth Circuit purportedly opined in that case that (a) applies to his arguments in the Motion for Discovery or (b) precluded him from adding a Title IX sex discrimination claim in the operative pleading. *See* [Doc. 71 at ¶ 3]. In any event, insofar as Plaintiff's reference to "*Doe I*" refers to *Doe v. Univ. of Denver ("Doe I")*, 952 F.3d 1182, 1191 (10th Cir. 2020), as the court suspects, *see* [Doc. 76 at 4], the court notes that that case does not preclude a plaintiff from filing a Title IX sex discrimination claim either. *See Doe I*, 952 F.3d at 1190 (explaining that "[t]he district court concluded that [the] [p]laintiff had failed to adduce sufficient evidence to raise a genuine dispute that gender was a motivating factor in DU's decision to expel him"); *see also See Norris v. Univ. of Colorado, Boulder*, 362 F. Supp. 3d 1001, 1014 (D. Colo. 2019) (observing that "[c]ourts have noted . . . a

>action was filed, and b) none of Regis' statistical records concerning student conduct matters, to include implementation of Title IX investigations, are public; they can only be had as a matter of discovery in a filed case.

[*Id.* at ¶ 3].

In other words, Plaintiff seeks discovery to support an unasserted Title IX claim, on the basis that such discovery is necessary before he can assert that claim. *See* [*id.*]. However, "[t]his puts the cart before the horse—a plaintiff does not get discovery until he alleges a plausible claim." *Dechant v. Grayson*, No. 2:20-cv-02183-HLT, 2021 WL 63280, at *2 n.3 (D. Kan. Jan. 7, 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)); *see also McGee*, 43 Fed. Appx. at 217 ("The district court was not required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim."); *Scherbarth v. Woods*, No. 16-cv-2391-KHR, 2018 WL 851344, at *7 (D. Colo. Feb. 13, 2018) ("Plaintiff cannot issue discovery to determine whether he could add a claim."); *Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2017 WL 3891756, at *3 (D. Colo. Jan. 13, 2017) ("The court sees no relevance in this request whatsoever. It is obviously a fishing expedition to see if any of the other cases, if any, had allegations or facts of which the defendants here are unaware."); *Super. Prod. Partn. v. Gordon Auto Body Parts Co., Ltd.*, 784 F.3d 311, 320–21 (6th Cir. 2015) ("In sum, '[a]lthough a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" (citations and internal quotations omitted)).[4]

---

'wave of litigation' brought by male university students who have been suspended or expelled after they had been found, after allegedly faulty investigations, to have violated school policies regarding sexual assault") (citations and internal quotes omitted)). Indeed, Plaintiff appears to concede this point, arguing only that *Doe I* created a "high bar for making a claim of sex discrimination"—not that it precluded Plaintiff from doing so. [Doc. 71 at ¶ 3].

[4] In any case, Plaintiff's arguments are based on an incorrect premise—namely, *Doe II* did not "allow[ ], for the first time in this district . . . a claim of sex discrimination under Title IX," as

In sum, this court finds that Plaintiff has not met his burden to establish the relevance or proportionality of the "discovery on a potential title IX claim" which he seeks in the instant Motion. *See* [Doc. 71 at 1 (capitalizations omitted)]; *see also* Fed. R. Civ. P. 26(b)(2)(C) ("On motion or on its own, the court "must limit the frequency or extent of discovery otherwise allowed by these rules if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)."). Moreover, insofar as Plaintiff seeks such discovery for the purpose of determining whether he may assert a Title IX sex discrimination claim, *see* [*id.* at 14 (arguing that "without access to [such] discovery" Plaintiff is "unable to make a determination as to the validity of a discrimination claim")], the court finds that the instant Motion for Discovery is an improper mechanism to seek such relief.[5]

---

Plaintiff contends. [Doc. 71 at ¶ 3]. Indeed, that claim existed before the Tenth Circuit decided *Doe II*. *See, e.g.*, *Norris*, 362 F. Supp. 3d at 1014. In *Doe II*, which similarly arose out of a sexual misconduct investigation conducted by the University of Denver and various administrators ("University"), the plaintiff alleged that the University "violated the sex discrimination prohibition of Title IX . . . because anti-male bias pervaded the sexual-misconduct investigation, resulting in a disciplinary decision against the weight of the evidence." *Doe II*, 1 F.4th at 824. The Tenth Circuit reversed the district court's grant of summary judgment in favor of the University on the plaintiff's title IX claim, concluding that the plaintiff "ha[d] provided sufficient evidence for a jury to decide whether the investigation into the allegations and subsequent disciplinary action discriminated against him because of his sex." *Id.* at 824–25. Further, the Tenth Circuit "reframe[d] the operative question for summary judgment [on a Title IX claim to] ask: Could a reasonable jury—presented with the facts alleged—find that sex was a motivating factor in the University's disciplinary decision?" *Id.* at 830. The Tenth Circuit did not, however, state that a plaintiff was barred from asserting a Title IX sex discrimination claim arising from the manner of a university's investigation against a plaintiff, as Plaintiff here claims.

[5] Indeed, as explained herein, Plaintiff does not claim that he has been precluded at all from asserting a Title IX sex discrimination claim. Instead, Plaintiff argues only that *Doe I* created "an impossibly high bar for making a claim of sex discrimination for an accused male student at the time this action was filed[.]" [Doc. 71 at ¶ 3]. Moreover, Plaintiff does not cite to any authority permitting a plaintiff to wait to assert a Title IX claim *in the operative pleading* merely because of the purported "high bar" for proving such claim, while also allowing the plaintiff to seek the discovery necessary to survive *summary judgment* on that same unasserted claim. *See* [*id.* (relying upon *Doe II*, which reversed the district court's grant of *summary judgment* in favor of the University on the plaintiff's title IX claim, concluding that the plaintiff "ha[d] provided sufficient

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

(1)   Plaintiff's Request for Leave to Conduct Discovery on a Title IX Claim [Doc. 71] is **DENIED**.

DATED: May 6, 2022

BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge

---

evidence for a jury to decide whether the investigation into the allegations and subsequent disciplinary action discriminated against him because of his sex." 1 F.4th at 824–25)].